UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DANNY R. & DEBRA R. SMITHSON, | ) | Case No. 03-54062-705 |
| | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| STIFEL, NICOLAUS & COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | Adv. No. 04-04101-293 |
| | ) | |
| DANNY R. SMITHSON, | ) | |
| | ) | |
| | ) | (**Publish**) |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Stifel, Nicolaus & Company ("Stifel") contends in this adversary proceeding that a $98,549.53 judgment Stifel obtained against Debtor in state court is excepted from discharge under 11 U.S.C. §523(a)(2)(A). Stifel also asserts that Debtor

-1-

should not be granted a discharge pursuant to either 11 U.S.C. §§727(a)(4) or

(a)(5). The Court will enter judgment in favor of Stifel on the §523(a)(2)(A) issue,

but in favor of Debtor on the §§727(a)(4) and (a)(5) issue.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this

proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01 (B) of the

United States District Court for the Eastern District of Missouri. This is a core

proceeding under 28 U.S.C. § 157(b)(2)(I), which the Court may hear and

determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FINDINGS OF FACT

The Court makes the following findings of fact. Debtor opened an account

with Stifel, a registered broker-dealer, on May 16, 2001 (the "Account"). Under

the terms of the Account, Stifel allowed Debtor to place a trade and then pay for it

at a later date provided either the broker handling the Account or the branch

manager approved the trade. Debtor additionally indicated on his application that

his investment objective was "speculation" and that he had $500,000.00 in liquid

assets.

The broker in charge of Debtor's account at Stifel was James Quicksilver

("James"). James inherited the Account from his wife, Jackie Quicksilver

-2-

("Jackie"), in early April 2002.  Debtor had a longstanding relationship with Jackie

at another brokerage firm where Jackie had managed the accounts of both Debtor

and Debtor's mother.  The testimony at trial established that Debtor had made

several trades with Jackie and that Debtor had always timely paid for those trades.

Shortly after James inherited the Account from Jackie,  Debtor called James

to inquire about the possibility of purchasing the stock of financially distressed

corporations, including Worldcom.  Debtor told James that he was about to sell a

parcel of real estate to the Missouri Department of Transportation (the "Land

Sale") and wanted to realize a quick gain from the sale proceeds by purchasing the

stock of a distressed company such as Worldcom.  James specifically

recommended to Debtor that he not purchase Worldcom stock because of

significant risk of loss due to the high volatility of Worldcom's stock price.

Debtor ignored James' advice and placed an order with Stifel on April 26,

2002 to purchase 50,000 shares of Worldcom stock at $3.65 per share  (the

"Trade").  The total purchase price for the Trade was $182,543.00.  James was out

of the office on the date of the Trade so Debtor contacted Kirk Halveland, James's

sales associate, to initiate the Trade.  Halveland obtained the approval of Stifel's

branch manager, Bill Lasko, before executing the Trade.

Before approving the Trade, Lasko inquired from Halveland as to whether

Debtor was willing and able to pay for the Trade.  Halveland, who had worked

with Jackie on Debtor's account at the previous firm, responded that he believed

that Debtor was both willing and able to pay for the Trade based on Debtor's prior

trading activity with Jackie.  Lasko approved the Trade based on Halveland's

comments.

Halveland called Debtor on the day of the Trade to notify him that Stifel had

executed the Trade.  Halveland also mailed Debtor confirmation of the Trade to

Debtor.  Halveland testified that Debtor never denied authorizing the Trade.

Debtor was required to pay for the Trade on or before May 1, 2002 (the

"Settlement Date").  Debtor, however, failed to pay for the Trade by the Settlement

Date.  At the time of the Trade, Debtor and his wife were the sole shareholders of

First Stop, Inc.  First Stop was in the business of selling mobile homes and was

experiencing severe financial difficulties.  First Stop's financial troubles also

caused significant financial problems for Debtor and his wife.

After Debtor failed to pay for the Trade on the Settlement Date, both James

and Stifel's general counsel, Tom Prince, called Debtor to inquire about payment.

Debtor claimed in these conversations that he would pay for the Trade from the

proceeds of the Land Sale.  Both James and Prince testified at trial that Debtor

never denied authorizing the Trade and maintained that he would pay for the

Trade.

Despite his statement to James and Prince, Debtor failed to remit payment for the Trade a week after the Settlement Date.  Worldcom's stock price declined precipitously during that week.  Accordingly, Stifel sold the 50,000 shares of Worldcom stock on May 10, 2002, for $83,993.91, which resulted in a $98,549.53 loss.

Stifel brought an action against Debtor in the Circuit Court of Jefferson County to recover the $98,549.53 loss.  Stifel obtained a default judgment in the amount of $98,549.53 against Debtor on January 28, 2003 (the "Judgment").

Debtor and his wife filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on October 20, 2003.   Stifel filed the instant adversary complaint against Debtor on May 3, 2004.  Count I of adversary complaint is Stifel's request that the Court determine that Debtor's obligation to it contained in the Judgment is excepted from discharge under 11 U.S.C. §523(a)(2)(A).  Stifel asserts in Count II of its adversary complaint that Debtor should be denied a discharge under either 11 U.S.C. §§727(a)(4) or (a)(5).

The Court will grant judgment in favor of Stifel on Count I and in favor of Debtor on Count II of the adversary complaint.

## CONCLUSIONS OF LAW

*A.  Debtor's Obligation to Stifel is excepted from discharge under §523(a)(2)(A).*

Section 523(a)(2)(A) of the Code excepts from discharge the debtor's obligation to pay for property to the extent that the debtor obtained the property "by false pretenses, a false representation, or actual fraud...".  In order to prevail on an action under §523(a)(2)(A), a creditor must establish the following elements by a preponderance of the evidence:  (1) that the debtor made a representation; (2) that at the time the debtor knew the representation was false; (3) that the debtor made the representation deliberately and intentionally and with the intent and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.  *Guske v. Guske (In re Guske)*, 243 B.R. 359, 362 (B.A.P. 8th Cir. 2000).  The Court finds that Stifel has produced sufficient evidence to meet its burden of proof with respect to all five elements.

*1.  Debtor made a representation that he would pay for the Trade,*

The first question the Court must address is whether Debtor made a representation. There are actually two possible representations at issue here: (1) Debtor's placement of the order to purchase 50,000 shares of Wolrdcom stock; and (2) Debtor's representation that he would pay for the Trade from the proceeds of

the Land Sale. The Court finds that the former is the relevant representation at issue here.

The evidence adduced at trial establishes that Lasko approved the Trade without relying upon Debtor's assertion that he would finance the Trade with the proceeds of the Land Sale. Rather, Lasko relied on Halveland's evaluation that Debtor would pay for the Trade based on Halveland's prior experience with Debtor. Stifel only relied on Debtor's representation that he would pay for the Trade with the proceeds of the Land Sale after it executed the Trade. Thus, Debtor's representation concerning his use of the sales proceeds to pay for the Trade is relevant only to the question of whether Stifel failed to mitigate its damages after it executed the Trade. And because Debtor failed to plead mitigation of damages as an affirmative defense, he waived the defense at trial.[1] *Bissett v. Burlington N. R.R. Co.,* 969 F.2d 727, 731 (8th Cir. 1992).

The next issue is whether Debtor's placement of the order to purchase the 50,000 shares of Worldcom stock constitutes a representation that he would actually pay for the shares. Although Debtor never explicitly represented to Stifel that he would pay for the Trade, any conduct that amounts to an assertion not in

---

[1] The Court notes that a plaintiff's duty to mitigate its damages is lessened when the defendant's actions constitute an intentional tort. *See Restatement (Second) of Torts* §918(2).

-7-

accordance with the truth constitutes a representation for purposes §523(a)(2)(A).

*Hodgin v. Conlin (In re Conlin)*, 294 B.R. 88, 99 (Bankr. D. Minn. 2003).  There is

no question that Debtor's conduct in placing the Trade with Stifel amounts to a

representation that he would in fact pay for it.  Thus, the Court finds Debtor's

placement of the order to purchase 50,000 shares of Worldcom stock constitutes a

representation that he would in fact pay for the Worldcom stock.

Debtor additionally contends that he never in fact placed the order to

purchase the 50,000 shares of Worldcom stock.  Rather, Debtor maintained at trial

that he only inquired as to the price of Worldcom stock on the day of the

Trade.  Debtor also testified that he told both James and Prince after the Settlement

Date that he did not authorize the Trade and would not pay for it.

The Court does not find Debtor's testimony credible on this point.

Halveland, James, and Prince all consistently testified that Debtor never denied

making the Trade  and in fact represented that he would pay for the Trade even

after the Settlement Date.   Further, although Debtor testified at trial that he

verbally challenged the validity of the Trade, he failed to remit his complaint in

writing to anyone at Stifel.  The Court believes that Debtor, who was a business

owner at the time, would have sent written notice to someone at Stifel if he truly

did not authorize the Trade.  Given this evidence and after judging the credibility

-8-

of the witnesses at trial, the Court concludes that Debtor did in fact place an order to purchase 50,000 shares of Worldcom stock.

2.  *Debtor knew that his representation was false at the time he made it.*

Because direct evidence of the debtor's subjective knowledge of the falsity of the misrepresentation is rarely available, a creditor may establish this element from the circumstances surrounding the transaction.  *Universal Bank v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000).  One of the circumstances a court should examine is whether the debtor had the ability to pay for the transaction at the time it entered into it.  *Id*.; *Minnesota Client Sec. Board v. Wyant (In re Wyant)*, 236 B.R. 684, 699 (Bankr. D. Minn. 1999).

Here, Debtor admitted at trial that at the time he placed the Trade, he did not have the ability to pay for the 50,000 shares of Worldcom stock.  Debtor also conceded that he was suffering severe financial difficulties because of his failing business.  The Court also believes that Debtor continued to represent to Stifel after the Settlement Date that he would pay for the Trade simply to buy more time in hopes that the Worldcom stock would appreciate in value. The Court finds that this evidence establishes that Debtor had no intention of paying for the Worldcom stock at the time he made the Trade unless the Worldcom stock quickly appreciated in value.

*3. Debtor made the representation that he would pay for the Trade with the intent that Stifel would rely upon it.*

A creditor, to satisfy the intent element under §523(a)(2)(A), must establish that the debtor made the misrepresentation in question with the intent to induce the creditor to rely and act upon the misrepresentation. *Merchants Nat. Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999). This intent may be inferred when the circumstances surrounding the transaction indicate that the debtor made the representation knowing that it would induce the creditor to act. *Id.*

Here, Debtor called Halveland to place an order to purchase 50,000 shares of Worldcom stock. Debtor had at least one conversation with James prior to the Trade concerning the purchase of Worldcom stock. Debtor further had a prior trading relationship with Jackie and Halveland. The Court finds that this evidence demonstrates that Debtor placed the Trade with the intent that Stifel would rely on his representation and execute the Trade.

*4. Stifel justifiably relied upon Debtor's representation that he would pay for the Trade.*

Debtor contends that Stifel's reliance on Debtor's representation that he would pay for the Trade was not justified because Stifel could have easily discovered the falsity of the statement if Stifel would have investigated Debtor's financial condition. While Stifel's reliance may not have been reasonable, the

-10-

Court finds that it was justifiable.

Because a cause of action under §523(a)(2)(A) incorporates the common law elements of fraud, a creditor need only show that it justifiably relied on debtor's representation. *Field v. Mann*, 516 U.S. 59, 72-73 (1995). Justifiable reliance does not require a creditor to adhere to some objectively reasonable standard. *Id*. at 70-71.

A creditor's reliance on a statement is not justifiable only if the creditor ignores obvious warning signs concerning the veracity of the representation at issue or if the representation is facially false. *Guske*, 243 B.R. at 363-64. These warning signs, however, must be perceptible to the creditor by simply using its senses in examining the information it already possesses. *Field*, 516 U.S. at 71; *Warning v. Austin (In re Austin)*, 317 B.R. 525, 531 (B.A.P. 8th Cir. 2004). This is true even if the creditor is sophisticated and could have easily discovered the falsity of the representation with a simple investigation. *Stanford Inst. for Sav. v. Gallo (In re Gallo)*, 156 F.3d 71, 74-75 (1st Cir. 1998) (*citing Restatement (Second) of Torts* §§ 540 and 541 *cmt. a).*

Here, there was no information that Stifel possessed that should have alerted it that Debtor did not intend to pay for the Trade. Debtor had a long standing relationship with Jackie and had never failed to pay for a trade in that relationship.

-11-

Additionally, Debtor listed his liquid assets at $500,000 on his application to open the Account.  Debtor also listed his investment objective as "speculation" on his application to open the account with Stifel, so that purchasing the stock of a distressed company such as Worldcom was consistent with Debtor's stated investment objective.

The Court finds that based on this evidence, Stifel was not in possession of information that should have put it on notice that Debtor was likely not to pay for the Trade at the time he placed it.  Accordingly, Stifel justifiably relied on Debtor's representation that he would pay for the 50,000 shares of Worldcom stock in executing the Trade.

*5.  Debtor's misrepresentation was the proximate cause of Stifel's damages.*

The final element that the creditor must establish under §523(a)(2)(A) is that the debtor's misrepresentation is the proximate cause of the creditor's damages. Thus, the creditor must establish more than the misrepresentation was simply a "but-for" cause of its injury.  *United States v. Spicer (In re Spicer)*, 57 F.3d 1152, 1157 (D.C. Cir. 1995).  Rather, in order to establish that the representation is the proximate cause of its injury, the creditor must demonstrate that its pecuniary loss was a foreseeable result of the debtor's misrepresentation.  *Gem Ravioli, Inc. v. Creta (In re Creta)*, 271 B.R. 214, 219 (B.A.P. 1st Cir. 2002) (*citing Restatement*

*(Second) of Torts* §548A).

Here, the direct result of Stifel's pecuniary loss was the precipitous drop in the value of Worldcom stock from May 1, 2002 to May 9, the day Stifel sold the 50,000 shares. The evidence adduced at trial established that Stifel's loss from such a drop was a foreseeable result of Debtor's misrepresentation that he would pay for the Trade. Debtor had called James about the possibility of purchasing Worldcom's stock in hopes of realizing a quick gain. James advised Debtor against making such a purchase because the high risk of significant losses due to the high volatility of Worldcom's stock price. Also, Debtor continued to represent to Stifel that he would pay for the Trade even after the Settlement Date in order to buy more time in hopes that the price of Worldcom shares would rebound.

The Court finds that this evidence establishes that Debtor should have reasonably foreseen that Worldcom's stock price would drop precipitously in the days immediately following the Trade. Therefore, the Court holds that Debtor's misrepresentation that he would pay for the 50,000 shares of Worldcom stock was the proximate cause of Stifel's pecuniary loss contained in the Judgment.

In conclusion, Stifel established by a preponderance of the evidence that Debtor made a representation that he would pay for the 50,000 shares of the Worldcom stock when he placed the Trade. Stifel also demonstrated that Debtor

-13-

knew that the representation was false when he made it and intended for Stifel to

rely on it in executing the Trade. Stifel additionally produced sufficient evidence

to show that it justifiably relied on Debtor's representation and that the

representation was the proximate cause of its pecuniary loss contained in the

Judgment. The Court, therefore, will enter judgment in favor of Stifel on Count I

of its complaint.

*B. Stifel has not established that Debtor should be denied a discharge under §727(a)(4) or (a)(5).*

In Count II of its complaint, Stifel requests that the Court deny Debtor a

discharge under 11 U.S.C. §§727(a)(4)(A) or (a)(5). The Court finds that Stifel has

failed to establish that Debtor should not be granted discharge under either

subsection.

Section 727(a)(4)(A) prohibits a debtor from obtaining a discharge if the

debtor "knowingly and fraudulently, in or in connection with the case, made a false

oath or account." The creditor must establish by a preponderance of the evidence

that the debtor failed to list an asset with the actual intent to deceive in order to

prevail under §727(a)(4)(A). *Floret, LLC v. Sendecky (In re Sendecky)*, 283 B.R.

760, 765-66 (B.A.P. 8th Cir. 2002).

Stifel argues that Debtor failed to list in his bankruptcy schedules the

$500,000.00 in liquid assets that he cited in his application to open the Account

-14-

with Stifel.  At trial, however, it was clear that Debtor was referring to several
parcels of real property, which he valued at $500,000.00, as the liquid assets on his
application with Stifel.  Debtor accounted for these assets on his bankruptcy
schedules and at the meeting of creditors held under 11 U.S.C. §341.  Stifel,
therefore, failed to meet its burden of proof under §727(a)(4)(A).

Section 727(a)(5) recites that a debtor may not receive a discharge if he
fails to adequately explain the loss or depletion of assets.  The creditor has the
burden of establishing by a preponderance of the evidence that the debtor failed to
adequately explain a depletion of an asset in order to prevail under §727(a)(5).
*Sendecky*, 283 B.R. at 763.  Also, once the creditor has initially identified a
depletion of an asset, the debtor then has the burden to explain the loss.  *Id*. at 766.
If the debtor's explanation of the depletion is too vague, uncertain, or indefinite,
then the debtor is not entitled to a discharge under §727(a)(5).  *Id*.

Stifel contends that Debtor failed to account for $190,000.00 in cash he
received upon the sale of a parcel of real estate sometime in 2002.  Debtor testified
that he used the $190,000.00 to pay the expenses of his failing business, First Stop.
The evidence at trial established that First Stop began experiencing severe financial
difficulties in 2000.  As the BAP explained in *Sendecky*, a debtor's use of cash to
pay the expenses of his business is a sufficient explanation of the consumption of

-15-

that cash for purposes of §727(a)(5).  *Id*.  Thus, the Court finds that Debtor's explanation that he used the $190,000.00 to pay First Stop's expenses is sufficiently adequate so that he should not be denied a discharge under §727(a)(5).

## **CONCLUSION**

Stifel produced sufficient evidence at trial to establish by a preponderance of the evidence that Debtor's obligation to it contained in the Judgment should be excepted from discharge under §523(a)(2)(A).  The Court, therefore, will enter judgment in favor of Stifel on Count I of the adversary complaint.

Stifel, however, failed to establish that Debtor acted with intent to deceive in failing to list the $500,000.00 in liquid assets in his bankruptcy schedules.  Debtor also adequately explained the consumption of the $190,000.00 in cash proceeds.  Thus, Stifel failed to demonstrate that Debtor is not entitled to a discharge under either §§727(a)(4)(A) or (a)(5) and the Court will enter judgment in favor of Debtor on Count II of the adversary complaint.

An Order consistent with this Memorandum Opinion will be entered this date.

DATED:  July 31, 2007

St. Louis, Missouri

JBB

_____

David P. McDonald

United States Bankruptcy Judge

-16-

Copy mailed to:

Danny R. Smithson
2145 Rock N Horse Farm Road
Festus, MO 63028

Jeffrey S. Heuer
Blackwell, Sanders et al.
Attorney for Plaintiff
Laclede Gas Building
720 Olive Street Suite 2400
St. Louis, MO 63101

Spencer P. Desai
Capes, Sokol, Goodman and Sarachan, P.C.
Attorney for Debtor
Pierre Laclede Center
7701 Forsyth Boulevard, 12th Floor
St. Louis, MO 63105